**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**UNITED STATES OF AMERICA,**              :
                                           :
    - against -                      :         No. 12 CR 065 (SLT)
                                           :
**JIMMY COURNOYER,**                       :
       also known as "Cosmo," et al.,       :
                                           :
             *Defendants*.               :
-------------------------------------------------------------X


# REPLY MEMORANDUM IN FURTHER SUPPORT OF JIMMY COURNOYER'S MOTION TO DISMISS


                                        MERINGOLO & ASSOCIATES, P.C.
                                        John C. Meringolo, Esq. (JM3487)
                                        Meringolo & Associates, P.C.
                                        375 Greenwich Street, Seventh Floor
                                        New York, New York 10013
                                        Direct No. (347) 599-0992

                                        *Attorneys for Defendant Jimmy Cournoyer*

## REPLY MEMORANDUM IN FURTHER SUPPORT OF JIMMY COURNOYER'S MOTION TO DISMISS

### Introduction

The government's recital of the facts and argument surrounding Mr. Cournoyer's arrest causes grave concern which necessitates this Court's mandating a dismissal of the Indictment or in the alternative immediately Order an evidentiary hearing. Disturbingly, the stark contrast between the defense and government's positions as to Mr. Cournoyer's demeanor towards Mexican authorities compels testimony and production. Initially, the simple fact that the government, through its Opposition, purports to have specific knowledge of the events from Mr. Cournoyer's initial detention in Mexico through his apprehension by the United States Marshals Service in Houston, Texas, not only contradicts the position taken in their Opposition[1], but strongly indicates – as advanced by the defense in its Motion to Dismiss – that the government was in constant and contemporaneous communication with the Mexican authorities in order to purposely avoid the proper extradition of Mr. Cournoyer.

Moreover, assuming the government is genuine in its assertion that Mr. Cournoyer's claim of brutal mistreatment is "wholly without merit," then it implicitly admits that it had knowledge of how he was treated and the measures taken to forcibly remove Mr. Cournoyer from Mexico warranting an evidentiary hearing. In addition, notably missing from the government's opposition is a denial – not to mention an addressing – the specific instances relied on by the

---

[1] The government falls short of denying that it played any role in Mr. Cournoyer's forcible abduction aside from reporting the Indictment to Interpol. Instead, the government states Mr. Cournoyer's assertion of the United States involvement in or directing of the actions taken by Mexican officials is "without any factual support" and "are entirely speculative and bereft of any evidentiary support." Opposition, Pg. 12.

1

defense to support its brutal mistreatment position, specifically (but not limited to) the hooding, verbal torment, and choking, of Mr. Cournoyer, after Mr. Cournoyer explained he was not allowed to enter the United States due to his Canadian criminal record and therefore needed a direct flight to Canada.

### Argument

The government contends that immediately upon being denied entry into Mexico, the Mexican authorities escorted Mr. Cournoyer to a commercial airline bound for Canada. Opposition, Pg. 10. The defense categorically rejects the government's contention, and maintains its position that Mr. Cournoyer was detained and taunted by officers calling him "blacklisted" before coercing him onto a flight to the United States. Being creative with their words, the government asserts that Mr. Cournoyer was escorted to an airline bound for Canada with a layover in Los Angeles, California, and Mr. Cournoyer became violent and physically resisted causing him to be removed from the flight. In reality, Mr. Cournoyer never boarded the plane. While being escorted to the terminal, he informed the head officer that he could not enter the United States due to his criminal record, and the officers never boarded him on the flight. The only violence that ensued was at the hand of the Mexican authorities – acting at the direction of the United States to deliver Mr. Cournoyer to the United States – when they then forced him into a second detention room.

The government incorrectly asserts that on two more occasions Mr. Cournoyer had to be removed from planes as a result of threatening the captain and crew. Opposition, Pg. 11. Again, the government is mistaken, and if it contends otherwise, clearly it can only do so from first-hand contemporaneous knowledge. Mr. Cournoyer did not board a second flight. Rather, an airline official saw the ruckus caused by a number of armed guards forcing Mr. Cournoyer towards a

2

terminal housing American commercial airlines, and **that airline official told the authorities he would not allow Mr. Cournoyer to board the plane**.  The fact that the government contradicts this position causes grave concern and necessitates an evidentiary hearing so that the parties and the Court can be properly informed before the Court rules on a motion sought to uphold longstanding Constitutional rights that are afforded to Mr. Cournoyer as a defendant in the United States.

Alarmingly, the government states that Mr. Cournoyer was placed under arrest when his flight landed in Houston, Texas, for a scheduled refueling.  Opposition, Pg. 11.  In its Opposition dated July 13, 2012, nearly five months after Mr. Cournoyer's arrest, it piques the curiosity of the defense as to how exactly the government could possibly know that the plane Mr. Cournoyer was shackled to had a scheduled refueling[2] in Houston.  It is simply disingenuous for the government to assert that it was not involved in Mr. Cournoyer's arrest until "he was arrested by DEA agents who had been alerted to his arrival."  Opposition, Pg. 15.

Additionally, it was simply unnecessary for the Mexican authorities to book Mr. Cournoyer a flight with a layover in order to return him to Canada – which was the proper course of action after his denied entry.  There is an abundance of direct flights from Cancun International Airport to Montreal.[3]

Although the government categorically denies counseling or directing Mexican officials to

---

[2] The flight from Cancun to Montreal is approximately four hours in duration.

[3] A cursory search of www.flightnetwork.com revealed both Air Canada and Air Transit flying direct in both directions between Cancun and Montreal.  For the Mexican authorities to have booked Mr. Cournoyer on four separate flights, each with layovers in the United States, strongly indicates if not requires that they were acting at the instruction of the United States.

torture or physically harm Mr. Cournoyer, its denial of instructing the forcible abduction denies logic, common sense, and insults the integrity of this Court. Opposition, Pg. 24. Essentially, the government cannot have it both ways – it is either the fortunate recipient of a very generous Mexican government that decided to abandon formality and go to great lengths to deliver Mr. Cournoyer to the United States or the government should admit that it instructed or worked in conjunction with the Mexican authorities to disregard procedure while employing tactics which inflicted mental torture on Mr. Cournoyer in the process of his forcible abduction to the United States. If the Indictment is not dismissed, an evidentiary hearing is necessary to reconcile the stark contrast between the government's version of the facts and their denial of involvement.

## CONCLUSION

For the reasons set forth above, Defendant Jimmy Cournoyer respectfully requests the Court dismiss the Indictment without prejudice and Order Mr. Cournoyer's release and return to Canada, or in the alternative, Order an evidentiary hearing.

Dated: New York, New York

      July 20, 2012

Respectfully submitted,

By: /s/ John C. Meringolo
**JOHN C. MERINGOLO, ESQ.** (JM3487)
Meringolo & Associates, P.C.
375 Greenwich Street, 7th Floor
New York, New York 10013
Direct No. (347) 599-0992
*Attorneys for Defendant Jimmy Cournoyer*

CC: AUSA Stephen Tiscone (and all counsel via ECF)