**Gerald J. McMahon, Esq.**
The Standard Oil Building
26 Broadway, 18th Floor
New York, New York 10004
212.797.1877
gm@geraldjmcmahon.com

August 15, 2014

By ECF & Mail

The Honorable Raymond J. Dearie
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

       Re: <u>United States v. Jimmy Cournoyer, et al.</u>
           12 Cr. 65 (S-1) (RJD)

Dear Judge Dearie:

    Although not contemplated by any court-issued scheduling order, the government filed a sur-reply sentencing memorandum on August 7, 2014 (docket entry no. 317) ("Gov't. Sur-Reply Memo."). Having just returned from a family vacation in Europe, I write in brief "sur-sur" reply on behalf of defendant Jimmy Cournoyer.

1. <u>Claimed Attempt to Reach for Pistol During Arrest in December 2001 in Toronto</u>
    Having admitted his participation in an ecstasy transaction, and his possession of a pistol with hollow point bullets, Mr. Cournoyer has very little to gain by persisting in his denial that he reached for the gun during his arrest – but persist he does. He is also willing to take a lie detector test, administered by an expert chosen by the government, to confirm his denial.

    Interestingly, the police reports from that arrest (appended to the Gov't. Sur-Reply Memo. as Exhibit B) reveal that defendant suffered injuries – post-arrest– which required hospitalization. Docket entry no. 317-2, at 17-18. In the history of law enforcement, the claim that an arrestee "reached for a weapon" has often been made to justify observable, post-arrest injuries.

The Honorable Raymond J. Dearie
United States District Judge
August 15, 2014
Page Two


2. Relationship with Paisse, Theft of $1.2 Million of Marijuana
   By Sean Werner (CW-1), and Kidnapping of Werner Girlfriend

In its initial sentencing memorandum, the government claimed that Paisse was brokering marijuana deals for Cournoyer as early as 2001 and that he "supplied" the $1.2 million worth of marijuana stolen by Sean Werner (CW-1) in or around 2004. Docket entry no. 311, at 5. In our reply sentencing memorandum, Cournoyer categorically denied having anything to do with the Sean Werner stolen marijuana or that Paisse brokered any marijuana deals for him. Docket entry no. 314, at 2-3. In sur-reply, the government virtually conceded the falsity of its claim that Cournoyer was the "supplier" of the marijuana stolen by Seam Werner (docket entry no. 317, at 2), and weakly claimed that defendant "introduced him [Paisse] to Hells Angels" (*id*., at 3).

Most significantly, when Paisse pled guilty on April 10, 2014, he allocuted to two (2) marijuana conspiracies: the first, "[b]etween 2002 to 2004" (which included the Sean Werner $1.2 million marijuana shipment), and the second, "[i]n 2007 ...[with the] co-defendants in my case", including Cournoyer. Transcript of Plea, April 10, 2014, at 16, 17. Removing all doubt, in response to questions from Magistrate Judge Pollak, Paisse confirmed that the suppliers in the first conspiracy were different from the suppliers in the second conspiracy. *Id*.

The government's belated attempt to undercut the credibility of Paisse ("Paisse engaged in only a single 'safety-valve' proffer with the government during which he minimized his involvement in many aspects of the criminal conspiracy" [Gov't Sur-Reply Memo., docket entry no. 317, at 2]) rings hollow when you consider that the prosecutor told Magistrate Judge Pollak that Paisse satisfied the requirements for safety valve treatment (Plea Transcript at 9-10). One of the requirements, of course, is that a defendant provide a truthful and complete description of his involvement in the criminal conduct, as well as that of any co-conspirators. *United States v. Ortiz*, 136 F.3d 882, 883 (2d Cir. 1997).

With regard to the kidnapping of Werner's girlfriend, the government piles one unsupported and speculative inference on top of another to reach the conclusion that "it was Paisse (and by extension Cournoyer)" (Gov't. Sur-Reply Memo., docket entry no. 317, at 4) who were involved in the kidnapping of the Werner girlfriend. The pile of inferences crumbles when you consider that Cournoyer had nothing to do with the Werner 2004 marijuana shipment (see above), and that there is scant, if any, evidence that Cournoyer assumed Paisse's $1.2 million debt.

3. Giusseppe Fetta and Connection to Rizzuto Family

In its initial sentencing submission (docket entry no. 311), the government claimed

The Honorable Raymond J. Dearie
United States District Judge
August 15, 2014
Page Three

that "Rizzuto soldier Giuseppe Fetta ... acted as a driver and bodyguard for Cournoyer". *Id*., at 7-8 n.10. In our reply sentencing memorandum, we unequivocally stated that Fetta never acted as the driver/bodyguard for defendant, but that Cournoyer was, for a period of time when he had no license, driven by an individual who looked like Fetta. Docket entry no. 314, at 5. In its sur-reply, the government does not dispute our factual assertion but opines that it's an "amazing coincidence" that Cournoyer and his brother were recorded on MDC telephone calls discussing the shootings of Fetta and Rizzuto boss Joseph DiMaulo. Gov't. Sur-Reply Memo., docket entry no. 317, at 4-5. Considering that the shootings were front page headlines in all the Montreal newspapers, it should have come as no surprise to the prosecutor that one brother told the other the big news from his home city. Nor was there anything furtive or coded about the conversations; the failure of the government to proffer the recordings or transcripts speaks more clearly than the jaded interpretation of the conversations by an advocate.

The two other pieces of "evidence" which the government offers to show a connection between Cournoyer and the Rizzuto Family – when arrested, co-defendant Taloni had in his possession a card with phone numbers of Rizzuto Family members, and Cournoyer was visited by an attorney who at one time represented Vito Rizzuto – fall far short of establishing that Cournoyer had "ties to the Rizzuto organized crime family." Gov't. Sur-Reply Memo., docket entry no. 317, at 4. As the government knows, Cournoyer and Taloni had never met each other prior to their arrests in this case. Whatever limited business dealings they may have had, it is not reasonable to infer that Cournoyer had ties to the Rizzuto Family simply because Taloni (who was an Italian citizen) did. Finally, the undersigned has, over thirty years, represented numerous alleged members of the five New York "organized crime families". It would be no more reasonable to infer that Cournoyer has ties to any of those families by virtue of that representation than it is to infer that he has ties to the Rizzuto Family because of his contacts with a Canadian criminal defense attorney.

4. <u>Stanley Cohen</u>

For almost two years, the undersigned has maintained that Stanley Cohen has been a "stalking horse" for the government; turning numerous defendants into cooperating witnesses seeking to curry favor with the government to cover his criminal shortcomings. For almost two years, the government has vehemently denied any such relationship. It now appears, however, that Cohen's work for the prosecution has paid off. Despite his decades-long, gross betrayal of his oath as a member of the learned profession, despite his indictments in two different districts in New York, and despite his absolute lack of remorse, the government has agreed to resolve all his crimes for a "stipulated sentence of 18 months in jail." Gov't. Sur-Reply Memo., at 7 n.5.

The Honorable Raymond J. Dearie
United States District Judge
August 15, 2014
Page Four


5. <u>Sentencing Disparity</u>

      The government misperceives the nature of defendant's argument. It is not a technical, legal argument, but rather a moral, metaphysical one. Conduct (and misconduct) can be graded on a moral scale; committing murder is worse than selling marijuana, no matter how much marijuana. Notwithstanding the categories, the recent EDNY cases cited by defendant in his reply sentencing memorandum demonstrate that more serious criminality has often resulted in lesser sentences that the government seeks for Mr. Cournoyer. Defendant's Reply Sentencing Memorandum, docket entry no. 314, at 9-12. How, for example, is it just and proportional that Randall Martinez can be responsible for over 100 violent home invasion robberies and one death by strangulation and receive a sentence of 22 years, and the government seeks 30 years for Mr. Cournoyer. It isn't just or proportional.

      Our appeal is to this Court's sense of what's right and what's wrong. How much is enough or, in other words, "sufficient but not greater than necessary". *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*), <u>cert. denied</u>, 556 U.S. 1268 (quoting 18 U.S.C. § 3553(a)).


                      Very truly yours,

                        /s/
                      Gerald J. McMahon


GJM:cw
cc: All Counsel
    (By ECF)


lt236